W. WEST ALLEN
Nevada Bar No. 5566
LEWIS ROCA ROTHGERBER  CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada   89169
Telephone: (702) 949-8230
Facsimile: (702) 949-8364
E-mail: wallen@lrrlaw.com

KOLISCH HARTWELL, P.C.
SHAWN J. KOLITCH (*Pro Hac Vice Pending*)
Oregon State Bar No. 063980
200 Pacific Building
520 S.W. Yamhill Street
Portland, OR 97204
Telephone: (503) 224-6655
Facsimile: (503) 972-9115
E-mail: shawn@khpatent.com

*Attorneys for Plaintiff*
*Future Motion, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| FUTURE MOTION, INC., | Case No.:   2:16-cv-00013-MMD-CWH |
| Plaintiff, | **PLAINTIFF'S <u>EMERGENCY</u> MOTION FOR AN *EX PARTE* TEMPORARY RESTRAINING ORDER, SEIZURE ORDER AND PRELIMINARY INJUNCTION** |
| v. | |
| CHANGZHOU FIRST INTERNATIONAL TRADE CO., | |
| Defendant. | |

Pursuant to Federal Rule of Civil Procedure 65, the Patent Act, 35 U.S.C. § 283, and Local Rule of Civil Practice 7-5, Plaintiff Future Motion, Inc. ("Future Motion") respectfully moves the Court for an emergency *ex parte* temporary restraining order, a seizure order, and a preliminary injunction against Defendant Changzhou First International Trade Co., Ltd. ("Changzhou"). This Motion is based upon the pleadings and the records on file herein, the Declaration of Kyle J. Doerksen In Support of Plaintiff's Motion for Temporary Restraining Order, Seizure Order and Preliminary Injunction ("Doerksen Decl."), the Declaration of Shawn J. Kolitch In Support of Plaintiff's Motion for Temporary Restraining Order, Seizure Order and Preliminary Injunction

7192699_1

3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

Lewis Roca
ROTHGERBER CHRISTIE

("Kolitch Decl."), and the oral argument of counsel, if any.

In support of this Motion, Future Motion attaches Exhibits A–D, respectively: (A) Declaration of Kyle J. Doerksen (and attachments thereto); (B) Declaration of Shawn J. Kolitch (and attachments thereto); (C) Certification in Support of Future Motion's *Ex Parte* Motion for Temporary Restraining Order; and (D) [Proposed] Order Granting the *Ex Parte* Temporary Restraining Order and Preliminary Injunction.

### BACKGROUND

Future Motion created and sells the ONEWHEEL® self-balancing electric vehicle, which resembles a skateboard with one large central wheel that extends above and below the board.  The device moves automatically as the rider leans in any particular direction, by sensing the orientation of the board and activating an electric motor to rotate the wheel in response.  Defendant has flagrantly copied Future Motion's product design and is willfully infringing Future Motion's U.S. design and utility patents by marketing and selling a copycat product known as the "Surfing Electric Scooter."

This is not a case of inadvertent infringement.  Rather, Defendant is knowingly disregarding Future Motion's intellectual property rights and attempting to compete unfairly with Future Motion for the same customers. Defendant is exhibiting and offering to sell its infringing goods at the 2016 International CES trade show just a short distance from this courthouse, with the ostensible goal of taking orders for the infringing product from U.S. customers and then fulfilling those orders by shipping the product from China back to the United States. Future Motion hereby requests that this Court enjoin this unlawful conduct and order seizure of the infringing products before Future Motion suffers irreparable harm.

### EMERGENCY *EX PARTE* RELIEF IS APPROPRIATE

Defendant has appeared in this District to exhibit its infringing products at the 2016 International CES trade show, which is being held January 6-9, 2016 at venues around Las Vegas. During the show, Defendant likely will be soliciting customers, offering its infringing products for sale, and sending orders back to China, where it will manufacture or have manufactured the infringing products and import them back to the United States. Defendant's presence in this District

2

1   and its willful patent infringement provide Future Motion good cause to seek emergency *ex parte*

2   relief. Accordingly, Future Motion asks that this Court to restrain Defendant from (1) making,

3   using, selling, offering to sell, and importing into the United States commercial products covered

4   by U.S. Patent No. 9,101,817 ("the '817 patent") and/or U.S. Patent No. D746,928 ("the '928

5   patent") (collectively the "Asserted Patents"); and (2) exhibiting any products at the 2016 CES

6   trade show that infringe the '817 patent and/or the '928 patent.  Future Motion further asks that this

7   Court order the seizure of any of Defendant's products and advertising materials brought to this

8   District that infringe the '817 patent and/or the '928 patent.

9        An *ex parte* order preserves the status quo ante and prevents irreparable harm. *See Granny*

10  *Goose Foods, Inc., v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974). This is precisely the

11  type of relief Future Motion seeks here. In seeking an order restraining Defendant from infringing

12  Future Motion's U.S. design and utility patents, Future Motion is requesting this Court's

13  assistance to preserve the status quo ante and prevent irreparable harm until the Court is able to

14  hold a hearing on these issues.

15       Courts may grant an *ex parte* temporary restraining order when: (1) immediate and

16  irreparable injury, loss, or damage will result to the applicant before the adverse party can be

17  heard; and (2) the moving party demonstrates the reason notice should not be required. Fed. R.

18  Civ. P. 65(b). Courts recognize the need for *ex parte* temporary restraining orders in intellectual

19  property cases. *See generally, Vuitton v. White*, 945 F.2d 569 (3d Cir. 1991). Indeed, this Court

20  has granted a number of *ex parte* TROs under similar circumstances involving foreign companies

21  appearing at Las Vegas trade shows and offering to sell infringing goods. *See, e.g.*, *Rubbermaid*

22  *Commer. Prods. V. Trust Commerc. Prods. Et al.,* Case No. 2:13-cv-02144-GMN-GWF, Dkt. 13

23  (D. Nev. 2014); *Hand & Nail Harmony, Inc. and Nail Alliance, LLC v. Guangzhou Cocome*

24  *Cosmetics Co. Ltd. et al.*, 2014 U.S. Dist. LEXIS 137221, *4 (D. Nev. Sept. 26, 2014); *Otter*

25  *Prods. v. Anke Group Indus. Ltd.,* 2:13-cv-00029, 2013 U.S. Dist. LEXIS 159755, *6 (D. Nev.

26  Jan. 8, 2013); *NIKE, Inc. v. QiLoo Int'l Ltd.,* 2012 U.S. Dist. LEXIS 189477, *4 (D. Nev. Feb. 7,

27  2012).

28

3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

Lewis Roca
ROTHGERBER CHRISTIE

In this case, there is good reason to order Future Motion's requested relief without providing formal notice to Defendant. Other than its presence at CES, Defendant has no known presence in the United States. (Kolitch Decl. ¶ 3.) Defendant is attending CES to generate business and develop and maintain business relationships with any existing accounts in the United States. When CES ends on January 9, 2016, Defendant will presumably leave the United States with any remaining infringing products in its possession, and with orders from United States customers for more of those products. A temporary restraining order and product seizure is necessary to prevent Defendant from offering for sale and selling the infringing products in this District, thereby stopping Defendant from causing irreparable harm to Future Motion.

This is a case in which a competitor has deliberately and knowingly copied Future Motion's patented product design, and is exhibiting and offering the infringing goods for sale at the CES show despite receiving notice of Future Motion's patent rights.  Specifically, Future Motion's demand letter dated December 28, 2015 informed Defendant of the existence of Future Motion's issued '817 patent and the issuance of Future Motion's '918 patent before the start of the CES show, as well as the likely infringement of these patents by Defendant's Surfing Electric Scooter product. (Kolitch Decl. ¶ 4.)   Counsel for Future Motion sent this demand letter to Defendant's email address specified on its website, as well as to Defendant's postal address in China by international FedEx.  (*Id.*)

Nevertheless, and in blatant disregard for Future Motion's U.S. patent rights, Defendant is exhibiting the "Surfing Electric Scooter" product at CES, distributing product literature describing the product, and showing videos of the product in use, all with the apparent goal of soliciting U.S. customers. (Kolitch Decl. ¶¶ 17-19).

Defendant's flagrant copying of Future Motion's patented product demonstrates a wanton disregard for U.S. law and further bolsters the need for *ex parte* relief. This Court has granted *ex parte* relief where the Defendant has similarly been present in this District at a well-attended trade

4

show and was engaged in willful and deliberate infringing activities at the show. *See*, *e.g.*, *Otter Prods.*, 2013 U.S. Dist. LEXIS 159755 (granting *ex parte* preliminary relief where the Defendants were engaged in selling and offering for sale obviously infringing products at a trade show in Las Vegas).

Further, Defendant's rights will be adequately protected. To ensure that Defendant has proper notice of the complaint, temporary restraining order and motion for preliminary injunction, Future Motion will effectuate personal service of the requisite documents at the CES trade show, and will promptly provide Defendant with further notice through electronic mail and international FedEx to Defendant's postal address in China.  On the other hand, if Defendant receives further advance notice of an impending TRO and product seizure, Defendant will likely move or conceal the infringing products temporarily, only to continue its illicit activities at CES later.

Finally, Future Motion will provide security as set forth in Fed. R. Civ. P. 65(c) and LR 65.1-2. Given the expediency of Future Motion's request for relief, Future Motion proactively obtained a certified check for $10,000 payable to the Court, and is prepared to post security for that amount immediately.  This amount or a lesser bond would be appropriate under the circumstances, where infringement of Future Motion's patent rights is clear and Defendant has no countervailing rights that would justify a more substantial bond. This Court has the discretion to set a bond amount at any appropriate level. *GoTo.com Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1211 (9th Cir. 2000) (citing Rule 65(c)). Because obtaining a replacement bond could result in a delay causing further irreparable harm to Future Motion, Future Motion asks that the Court set security at an amount not to exceed $10,000 and, further, to allow lawful money to be deposited with the Clerk in lieu of surety pursuant to LR 65.1-2.

## STATEMENT OF FACTS

3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

Lewis Roca
ROTHGERBER CHRISTIE

## I.       Future Motion's Asserted Patents and Product

Future Motion created and sells the ONEWHEEL® self-balancing electric vehicle, which resembles a skateboard with one large central wheel that extends above and below the board.  The wheel is driven by an electric motor, which is controlled in response to the orientation of the board.  Thus, the board propels itself in whatever direction the rider leans.  (Doerksen Decl. ¶ 3.) The product made its debut at the 2014 CES trade show, and has subsequently received a large amount of positive press coverage, including complimentary reviews and reports broadcast or published by NBC, CNN, Bloomberg, Yahoo, Business Insider, the Wall Street Journal, Engadget, Wired, and Playboy, among others.  (Doerksen Decl. ¶ 5.)  Future Motion is a start-up company, and ONEWHEEL® is the company's first product. The product has been sold to customers throughout the United States and in at least 44 other countries.  (Doerksen Decl. ¶ 6.)  The product generated over $3 million in revenue for Future Motion in 2015. (*Id.*)

Future Motion has expended significant time and resources developing and marketing its ONEWHEEL® product, as well as protecting its intellectual property rights relating to the product.  In addition to the '928 patent and the '817 patent, Future Motion owns three other pending U.S. patent applications and several pending foreign patent applications covering the product, as well as trademark registrations and pending applications for ONEWHEEL® and related trademarks in the United States and eight other countries. (Kolitch Decl. ¶ 5.)

Defendant is infringing the '928 patent, which claims an ornamental design for a one-wheeled vehicle, and which covers Future Motion's ONEWHEEL® product.  The United States Patent and Trademark Office ("USPTO") issued the '928 patent on January 5, 2016 after finding it to meet the requirements for patent protection, and the inventor assigned the patent to Future Motion.  The validity of Future Motion's rights in the ornamental design claimed by the '928 patent has never been challenged. (Kolitch Decl. ¶¶ 6-7.)

Defendant is also infringing at least claims 1, 5 and 7 of the '817 patent, which are directed to a one-wheeled, self-balancing electric vehicle with lights at each end of the board that change colors when the board changes its direction of motion.  Like the '928 patent, the '817 patent covers Future Motion's ONEWHEEL® product.  USPTO issued the '817 patent on August 11,

2015 after finding it to meet the requirements for patent protection, and the inventor assigned the patent to Future Motion.  The validity of Future Motion's rights in the invention claimed by the '817 patent has never been challenged. (Kolitch Decl. ¶¶ 8-9.)

## II.    Defendant's Infringing Activities

### A.    The CES Exhibition

The 2016 International Consumer Electronics Show ("CES") will be held at multiple venues in Las Vegas from January 6-9, 2016.  The show has been held annually for more than 40 years, and is widely viewed as one of the most important annual trade shows in the world. (Doerksen Decl. ¶ 7.)  Companies of all sizes showcase their innovative products at CES, as well as establishing new customers and distribution channels.  (*Id.*)  Future Motion itself debuted its ONEWHEEL® product at the 2014 CES show.  (Doerksen Decl. ¶ 5.)

Companies attend CES to exhibit their products and conduct business. Accordingly, exhibitors typically come to CES to solicit new customers, take product orders, and generally offer their products for sale. In some circumstances, a deal may be completed on the show floor. At other times, deals are completed off-site at separate conference or hotel rooms. (Doerksen Decl. ¶ 8.)

Defendant undoubtedly spent thousands of dollars to fly to Las Vegas from China, to bring products to exhibit, sell and/or give away, and to rent a booth at CES, and is exhibiting at CES with the purpose of recouping these expenses by conducting business and offering their products for sale. (Doerksen Decl. ¶ 9.)  Indeed, the CES booth rental cost alone starts at several thousand dollars per booth, and Defendant appears to have rented three booths at this year's event. (Doerksen Decl. ¶ 10.)  Defendant has distributed an advertising flyer, a copy of which has been obtained by Future Motion, which advertises the infringing products and invites potential customers to visit Defendant's booth at CES to see the products.  (Doerksen Decl. ¶ 11; Complaint Ex. D.)  This flyer is also available on Defendant's website.  (Kolitch Decl. ¶ 16.)

At the time of filing of this motion, Defendant is exhibiting the infringing products at CES booth No. S2-25436, and advertising the products with banners, videos, and product literature that Defendant is freely distributing. (Doerksen Decl. ¶ 21; Kolitch Decl. ¶¶ 17-19.)  Thus, irreparable

3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

Lewis Roca
ROTHGERBER CHRISTIE

harm to Future Motion is already occurring. (Doerksen Decl. ¶ 18.)

With the exception of Defendant's temporary presence in Las Vegas during the CES show, Future Motion, after a reasonable investigation, cannot locate any domestic corporate presence for Defendant. (Kolitch Decl. ¶ 3.)

**B.     Defendant's Internet Presence**

In addition to its presence at the CES show, Defendant publishes a company English website (www.cz-first.com) where it advertises the infringing products in the United States, and also uses the Chinese e-commerce website Alibaba.com to advertise and sell the products. (Kolitch Decl. ¶¶ 10-11.)  According to transaction data which the Alibaba site makes public, in 2015 Defendant sold the infringing products in three separate transactions with a total value greater than $70,000.  (Kolitch Decl. ¶¶ 12-13.)  One of the transactions was to a customer in Iceland, one was to a customer in Germany, and at least one was to a customer in the United States. (Kolitch Decl. ¶ 13.)

**C.     Defendant's Infringing Product**

Defendant's "Surfing Electric Scooter" is virtually an exact copy of Future Motion's ONEWHEEL® product, and clearly infringes at least Future Motion's '928 patent and claims 1, 5 and 7 of Future motion's '817 patent, as demonstrated below.

Table 1 below shows images of the infringing product taken from Defendant's website, corresponding drawings from the '928 patent, and relevant images of the Future Motion ONEWHEEL® product:

///

///

///

///

///

///

///

**Table 1**

3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

Lewis Roca
ROTHGERBER CHRISTIE

| Defendant's Surfing Electric Scooter | Drawing from the '928 patent | Future Motion ONEWHEEL® |
|---|---|---|
|  (Complaint Ex. C, p. 4) |  (Complaint Ex. A, p. 3) |  (Kolitch Decl. ¶ 14) |
|  (Complaint Ex. C, p. 3) |  (Complaint Ex. A, p. 4) |  (Kolitch Decl. ¶ 14) |
|  (Complaint Ex. C, p. 3) |  (Complaint Ex. A, p. 4) |  (Kolitch Decl. ¶ 14) |

The Surfing Electric Scooter is strikingly similar in appearance to both the '928 patent drawings and the Future Motion ONEWHEEL® product, strongly suggesting that Defendant copied the ONEWHEEL® design.   In addition, as shown below, Defendant appears to have copied an instructional image from the ONEWHEEL® owner's manual and used it as part of the Surfing

3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

Lewis Roca
ROTHGERBER CHRISTIE

Electric Scooter product description on Defendant's Alibaba.com web page:

**Image from Defendant's Alibaba.com page:**

 

**Image from ONEWHEEL® owner's manual:**

 

(Kolitch Decl. ¶ 15.)   It seems inconceivable that Defendant could have created its image, including so many identical details to the Future Motion image, without directly copying the image out of the ONEWHEEL® owner's manual.  This is further strong evidence that Defendant copied Future Motion's product design, because using the same instructional image for two different products makes sense only if the products look the same.

Table 2 below is a claim chart demonstrating how Defendant's product includes all of the elements of claims 1, 5 and 7 of the '817 patent, and therefore literally infringes the patent:

**Table 2**

| Claim Element of the '817 Patent | Corresponding Feature of Defendant's Surfing Electric Scooter |
|---|---|
| 1.      An electric vehicle, comprising: | Defendant's "surfing electric scooter" is clearly an electric vehicle. |
| a board including first and second deck portions each configured to receive a left or | Defendant provides numerous images of a rider with one foot on each of a first and |

3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

LewisRoca
ROTHGERBER CHRISTIE

| right foot of a rider; | second deck portion of its product:<br><br><br><br>(Complaint Ex. C, p. 7) |
|---|---|
| a wheel assembly including a ground-contacting element disposed between and extending above the first and second deck portions; | The image above clearly shows that Defendant's product has a wheel contacting the ground, disposed between and extending above the deck portions. |
| a motor assembly mounted to the board and configured to rotate the ground-contacting element around an axle to propel the electric vehicle; | Defendant advertises that its product has "Motor power" of 700 Watts.  This clearly means 700 Watts of power supplied to an electric motor configured to rotate the wheel of the device.<br><br>(Complaint Ex. C, p. 5) |
| at least one sensor configured to measure orientation information of the board; | Defendant advertises that its product uses "space attitude control principle & gyroscope system to realize direction of the balance".  A "gyroscope system" is a sensor configured to measure orientation of the board.<br><br>(Complaint Ex. C, p. 6) |
| a motor controller configured to receive orientation information measured by the sensor and to cause the motor assembly to propel the electric vehicle based on the orientation information; | Defendant advertises that "When your body tilts to the left or right in the riding direction, the trotter electric scooter will perceive your action to speed up or slow down." The only plausible way to accomplish this is for a motor controller to receive orientation information measured by the sensor and to cause the motor assembly to propel the electric vehicle based on the orientation information.<br><br>(Complaint Ex. C, p. 8) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

LEWIS ROCA
ROTHGERBER CHRISTIE

| a first light assembly disposed at a first end portion of the board; and | Defendant advertises and shows a light assembly at each end portion of the board.<br><br>(Complaint Ex. C, p. 4) |
|---|---|
| a second light assembly disposed at a second end portion of the board; | Defendant advertises and shows a light assembly at each end portion of the board.<br><br>(Complaint Ex. C, p. 4) |
| wherein the first light assembly is configured to output light of a first color when the board is being propelled generally in a first direction and automatically to change color and output light of a second color when the board is being propelled generally in a second direction; and | Defendant advertises and shows that each light assembly outputs white light if the board is moving in the direction of that light assembly, and red light if the board is moving in the direction of the other light assembly. Defendant calls this "Forward Side White Light" and "Back Side Red Light."  This can only occur if the lights automatically reverse colors when the board changes direction.<br><br>(Complaint Ex. C, p. 4) |
| wherein the second light assembly is configured to output light of the second color when the board is being propelled generally in the first direction and automatically to change color and output light of the first color when the board is being propelled generally in the second direction. | Defendant advertises and shows that each light assembly outputs white light if the board is moving in the direction of that light assembly, and red light if the board is moving in the direction of the other light assembly. Defendant calls this "Forward Side White Light" and "Back Side Red Light."  This can only occur if the lights automatically reverse colors when the board changes direction.<br><br>(Complaint Ex. C, p. 4) |
| 5.      The electric vehicle of claim 1, | Defendant's product includes all of the elements of claim 1 as demonstrated above. |
| wherein the first color is white and the second color is red. | Defendant advertises and shows that each light assembly outputs white light if the board is moving in the direction of that light assembly, and red light if the board is moving in the direction of the other light assembly. |

12

| | Defendant calls this "Forward Side White Light" and "Back Side Red Light."<br><br>(Complaint Ex. C, p. 4) |
|---|---|
| 7.   An electric skateboard, comprising: | Defendant's "surfing electric scooter" can be characterized as an electric skateboard. |
| a foot deck having first and second deck portions each configured to support a rider's foot; | Defendant provides numerous images of a rider with one foot on each of first and second deck portions of a foot deck of its product:<br><br><br><br>(Complaint Ex. C, p. 7) |
| exactly one ground-contacting wheel disposed between and extending above the first and second deck portions and configured to rotate about an axle to propel the skateboard; | The image above shows that Defendant's product has exactly one ground-contacting wheel disposed between and extending above the first and second deck portions and configured to rotate about an axle to propel the skateboard. |
| at least one sensor configured to measure an orientation of the foot deck; | Defendant advertises that its product uses "space attitude control principle & gyroscope system to realize direction of the balance".  A gyroscope system is precisely a sensor configured to measure orientation of the foot deck.<br><br>(Complaint Ex. C, p. 6) |
| an electric motor configured to cause rotation of the wheel based on the orientation of the foot deck; | Defendant advertises that its product has "Motor power" of 700 Watts.<br><br>(Complaint Ex. C, p. 5) |

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

| | |
|---|---|
| a first light assembly disposed at a distal end of the first deck portion; and | Defendant advertises and shows a light assembly at each end portion of the board.<br><br>(Complaint Ex. C, p. 4) |
| a second light assembly disposed at a distal end of the second deck portion; | Defendant advertises and shows a light assembly at each end portion of the board.<br><br>(Complaint Ex. C, p. 4) |
| wherein the first light assembly is configured automatically to output light of a first color when the board is being propelled generally in a first direction and automatically to output light of a second color when the board is being propelled generally in a second direction; and | Defendant advertises and shows that each light assembly outputs white light if the board is moving in the direction of that light assembly, and red light if the board is moving in the direction of the other light assembly. Defendant calls this "Forward Side White Light" and "Back Side Red Light." This can only occur if the lights automatically reverse colors when the board changes direction.<br><br>(Complaint Ex. C, p. 4) |
| wherein the second light assembly is configured automatically to output light of the second color when the board is being propelled generally in the first direction and automatically to output light of the first color when the board is being propelled generally in the second direction. | Defendant advertises and shows that each light assembly outputs white light if the board is moving in the direction of that light assembly, and red light if the board is moving in the direction of the other light assembly. Defendant calls this "Forward Side White Light" and "Back Side Red Light." This can only occur if the lights automatically reverse colors when the board changes direction.<br><br>(Complaint Ex. C, p. 4) |

**LEGAL ARGUMENT**

14

In light of the facts above, and applying the controlling law, the Court should award the temporary relief requested in this motion and described in the Proposed Order. First, Future Motion is likely to prevail on the merits of this case because Future Motion will be able to show that Defendant is infringing Future Motion's Asserted Patents. Second, Defendant's unlawful activities are causing Future Motion irreparable harm in the form loss of the exclusive use of Future Motion's patent rights, potential loss of market share, and untold harm to Future Motion's good will and reputation among consumers. Third, the balance of equities favors Future Motion, because in the absence of injunctive relief, it will face infringing competition and an erosion of its intellectual property rights, whereas if injunctive relief is granted, Defendant will simply be required to observe the law of fair trade practices. Fourth, the public interest favors entering an injunction, because public policy favors enforcing intellectual property laws, and non-infringing substitute goods exist in the market. Accordingly, Future Motion respectfully asks this Court to grant Future Motion's requested relief, as set forth in the Proposed Order.

## I.   FUTURE MOTION IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

The law of the Federal Circuit governs Future Motion's patent claims.   Under Federal Circuit law, to obtain injunctive relief the plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) irreparable harm in the absence of an injunction; (3) that the balance of equities tips in plaintiff's favor; and (4) that injunctive relief is in the public's interest. *See AstraZeneca LP v. Apotex, Inc.,* 633 F.3d 1042, 1049 (Fed. Cir. 2010). The standard for a temporary restraining order is the same as the standard for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.,* 240 F.3d 832, 839 n. 7 (9th Cir. 2001).

### A.   FUTURE MOTION IS LIKELY TO SUCCEED ON THE MERITS

To establish a likelihood of success on the merits of its patent infringement claims, Future Motion "must show that it will likely prove infringement, and that it will likely withstand

15

challenges, if any, to the validity of the patent." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). Future Motion can easily satisfy these requirements.

### 1.    Defendant Infringes the '928 Patent

Because Defendant has clearly reverse engineered and copied Future Motion's product design in virtually every detail, Future Motion will likely succeed in proving that Defendant infringes Future Motion's '928 design patent. To evaluate design patent infringement, the Court must first construe the design patent's claim and then compare the patented and accused designs. *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002) ("determining whether a design patent is infringed is a two-step process. First, the court must construe the design patent's claim. . . . Next, the fact-finder must compare the claim and the accused device.") (citations omitted). Construction of a design patent must "be adapted to a pictorial setting" because design patents are "typically claimed as shown in the drawings." *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1302 (Fed. Cir. 2010).

While a court must explain the rationale for its construction of a design patent claim, the analysis should focus on the design as a whole and need not be extensive. *See id.* ("the Commission placed undue emphasis on particular details of its written description of the patented design. Those details became a mistaken checklist for infringement."); *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010). Here, the claim articulated in the '928 patent is unambiguously illustrated by the figures of the patent, and Future Motion believes it is clear that Defendant infringes the '928 patent under any reasonable construction of the claim.

After claim construction, the infringement analysis calls for determining whether the accused design is "substantially the same" as the claimed design. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993). The Court must focus on the overall impression given by the claimed design, rather than particular ornamental details. *Crocs*, 598 F.3d at 1303.

16

Accordingly, infringement of a design patent rests on the ordinary observer test, i.e., whether "in the eye of an ordinary observer, giving such attention as a purchaser usually gives . . . [the] resemblance [between the claimed design and the accused product] is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc) (quotations omitted). Minor differences between the patented design and the accused design do not prevent an infringement finding; an accused product can infringe even though it is not identical to the patented design. *Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993).

The ordinary observer test is plainly satisfied here. The overall appearance of the Defendant's "Surfing Electric Scooter" product is so similar to the patented design that an ordinary observer would be likely to mistake the "Surfing Electric Scooter" for the design claimed by the '928 patent.  Similarly, an ordinary observer would be likely to confuse the "Surfing Electric Scooter" with Future Motion's patented ONEWHEEL® product. "When the patented design and the design of the article sold by the patentee are substantially the same, it is not error to compare the patentee's and the accused articles directly." *L.A. Gear,* 988 F.2d at 1125-26. Indeed, "[s]uch a comparison may facilitate application of the *Gorham* criterion of whether an ordinary purchaser would be deceived into thinking that one were the other." *Id.* In this case, the ordinary observer test can be satisfied by comparing Defendant's accused product to either the patented design or Future Motion's ONEWHEEL® product.

More specifically, as shown above in Table 1 (p. 9, *supra*), the obvious and strong resemblance between the accused product and both the patented design and its embodiment in Future Motion's ONEWHEEL® product demonstrates Future Motion's likelihood of success on the merits.  Defendant's accused "Surfing Electric Scooter" incorporates the same overall shape, configuration of parts, and dimensions (both relative and absolute) as the patented design, creating

an overall visual impression which is substantially identical to the patented design.  An ordinary observer, such as a potential customer, could easily confuse one of these designs for the other and would be very likely to do so.  Accordingly, an ordinary observer would find Defendant's accused "Surfing Electric Scooter" to be substantially similar to the design claimed in the '928 patent, and Future Motion will be able to demonstrate infringement of the patent.

### 2.      Defendant Infringes the '817 Patent

"A determination of infringement is a two-step process. The court must first construe the asserted claims and then compare the properly construed claims to the allegedly infringing devices." *Pause Tech. LLC v. TiVo Inc.*, 419 F.3d 1326, 1335 (Fed. Cir. 2005) (citation omitted). In comparing utility patent claims to an accused product, a patent owner must prove that "the accused device contains each limitation of the asserted claim, or an equivalent of each limitation." *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1334 (Fed. Cir. 2003) (citations omitted). Here, Table 2 above demonstrates that under the plain meaning of the claim language, Defendant's "Surfing Electric Scooter" infringes at least claims 1, 5 and 7 of Future Motion's '817 patent. More specifically, Table 2 demonstrates that the accused product literally includes each and every element of claims 1, 5 and 7 under any reasonable interpretation of those claims.  (See pp. 10-14, *supra*.)  This is not surprising, since Defendant has obviously engaged in wholesale copying of Future Motion's patented product.  Accordingly, Future Motion is likely to succeed on the merits of its claim that Defendant infringes the '817 patent.

### 3.      The Asserted Patents are Valid

Future Motion will likely withstand a validity challenge to the Asserted Patents. An issued U.S. patent is given a statutory presumption of validity. *See* 35 U.S.C. §§ 171, 282; *Advanced Commc'n Design, Inc. v. Premier Retail Networks, Inc.,* 46 Fed. App'x 964, 983 (Fed. Cir. 2002). The trial court can deny a preliminary injunction if it "concludes there is a 'substantial question' concerning the validity of the patent, meaning that the alleged infringer

18

has presented an invalidity defense that the patentee has not shown lacks substantial merit." *Titan Tire*, 566 F.3d at 1379 (Fed. Cir. 2009). Here, Defendant will not likely be able to raise a substantial question of validity.

Invalidity is generally proven by demonstrating that the patented invention or design is either anticipated or rendered legally obvious by the prior art. *See* 35 U.S.C. §§ 102-103. Future Motion is not aware of any evidence that would tend to anticipate the design claimed in the '928 patent or the invention claimed in the '817 patent. (Doerksen Decl. ¶ 15.) With respect to obviousness, various secondary considerations support the nonobviousness of Future Motion's Asserted Patents. *See generally Wyers v. Master Lock Co.*, 616 F.3d 1231, 1245 (Fed. Cir. 2010) (discussing "secondary indicia of nonobviousness" such as commercial success and copying).

First, as discussed above, Defendant has transparently copied Future Motion's ONEWHEEL® product, which embodies and practices the Asserted Patents. This deliberate copying suggests that the claims of Future Motion's patents are not legally obvious. *See Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1285 (Fed. Cir. 2000) (citing *Vandenberg v. Dairy Equip. Co.*, 740 F.2d 1560, 1567 (Fed. Cir. 1984) ("The copying of an invention may constitute evidence that the invention is not an obvious one. . . . This would be particularly true where the copyist had itself attempted for a substantial length of time to design a similar device, and had failed.")).

In addition, the Future Motion ONEWHEEL® product embodying the Asserted Patents has enjoyed significant commercial success, with more than $630,000 raised in Future Motion's initial Kickstarter campaign in a three-week period in 2014 (out of a goal of just $100,000), and over $3 million in revenue generated in 2015, which was the first full year of sales. (Doerksen Decl. ¶ 16.) These numbers represent significant commercial success for a niche recreational product launched only two years ago, providing another secondary consideration suggesting that

19

Future Motion's patents are not obvious. *See, e.g.*, *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1344 (Fed. Cir. 2011) ("There was substantial evidence whereby a reasonable jury could have found copying and commercial success, and could have weighed these factors in favor of nonobviousness.").

Based on the above, Future Motion will likely be able to prove that Defendant's "Surfing Electric Scooter" infringes the Asserted Patents, and that the patents are not invalid. Accordingly, Future Motion is likely to succeed on its patent infringement claims.

### B.    FUTURE MOTION WILL BE IRREPARABLY HARMED IN THE ABSENCE OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

If Defendant is permitted to promote the infringing products and take orders at the CES show, and then return to China to fulfill these orders and build additional business, Future Motion will suffer irreparable harm.  This harm will occur in the form of the loss of Future Motion's exclusive patent rights, loss of market share that Future Motion may never be able to recover, and immeasurable damage to Future Motion's good will and reputation as the creator and only authorized provider of its patented invention.

First, injuries related to Future Motion's potential loss of market share and loss of exclusive patent rights cannot be readily quantified, and relief may never be forthcoming. Defendant's "Surfing Electric Scooter" is competing with the Future Motion ONEWHEEL® product that practices the Asserted Patents. (Doerksen Decl. ¶¶ 17-18.)  "Competitors change the marketplace. Years after infringement has begun, it may be impossible to restore a patentee's (or an exclusive licensee's) exclusive position by an award of damages and a permanent injunction." *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996); *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) (Rader, C.J.) ("mere damages will not compensate for a competitor's increasing share of the market, a market which [the patentee] competes in, and a market that [the patentee] has in part created with its investment in patented

20

technology.").

Second, Defendant's infringement erodes and devalues Future Motion's intellectual property rights, thereby inflicting injury to Future Motion's goodwill and reputation. *See, e.g., Otter Prods. v. Anke Group Indus. Ltd.*, 2:13-cv-00029, 2013 U.S. Dist. LEXIS 159755,*6 (D. Nev. Jan. 8, 2013) (explaining that absent the requested TRO, plaintiff was likely to suffer "irreparable injury . . . in the form of (a) loss of control over its intellectual property rights; (b) loss of consumer goodwill; and (c) interference with [plaintiff's] ability to exploit the OTTERBOX trademarks and design patents."); *Farmer Brothers Co. v. Albrecht*, No. 2:11-CV-01371, 2011 WL 4736858, at *3 (D. Nev. Oct. 6, 2011) ("Loss of customers or goodwill constitutes irreparable harm . . ."); *see also Gallagher Benefit Servs., Inc. v. De La Torre*, 283 Fed. App'x 543, 546 (9th Cir. 2008) (potential loss of goodwill and customers causes irreparable injury). Defendant is making a product designed to look and function exactly like the Future Motion ONEWHEEL® product and patented design, and to compete unfairly with the ONEWHEEL® product. (Doerksen Decl. ¶ 17.)   This will harm Future Motion's reputation among consumers and CES attendees, and will likely invite even further infringement from Defendant and others.

Finally, because Defendant is a foreign company with no apparent U.S. presence, any monetary judgment is likely to be uncollectible. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) ("all three defendants are foreign corporations and [ ] there is little assurance that [plaintiff] could collect monetary damages") (internal citation omitted). This Court has found that money damages were insufficient in similar cases involving foreign infringers. *See, e.g., Aevoe Corp. v. AE Tech Co., Ltd.*, 2012 U.S. Dist. LEXIS 8248 (D. Nev. Jan. 24, 2012); *Otter Prods.*, 2013 U.S. Dist. LEXIS 159755 at *6 ("because Anke has no presence in the United States, it may be difficult or impossible for OtterBox to enforce a monetary judgment against Anke").

## C.   THE BALANCE OF EQUITIES TIPS IN FUTURE MOTION'S FAVOR

"The 'balance of hardships' assesses the relative effect of granting or denying an injunction on the parties[.]" *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010). In this case, the balance of hardships tips decidedly in Future Motion's favor.

First, as already discussed, Future Motion will suffer extensive irreparable harm absent an injunction. *See Nike, Inc. v. Meitac Int'l Enterprise Co., Ltd.*, 2006 U.S. Dist. LEXIS 94662, *3 (D. Nev. 2006) ("Nike will be severely handicapped in its ability to prevent further importation of infringing products, thereby destroying any potential of preserving the status quo pending a resolution of this case on its merits."). Additionally, Future Motion's reputation will be harmed if Defendant is allowed to continue to sell its counterfeit and infringing products, because Future Motion will be unable to effectively police the market and enforce its intellectual property rights. *See Cal. Med. Prods., Inc. v. Emergency Med. Prods., Inc.*, 796 F. Supp. 640, 647 (D.R.I. 1992) ("Denial of the motion for injunctive relief, therefore, would cause considerable harm to [the patentee's] reputation and threaten its market position. . . . Accordingly, the Court finds that the potential harm to [the patentee] outweighs the potential harm to [the defendant].").

The irreparable harm to Future Motion will be compounded if Defendant's product causes customer dissatisfaction. *See, e.g.*, *Florist's Transworld Delivery v. Worldwide Flower & Gift Emporium*, 1998 U.S. Dist. LEXIS 7818, *8 (D. Nev. 1998) ("Any dissatisfaction by such customers could not be measured or remedied by plaintiff, thus affecting plaintiff's goodwill."); *see also Gallagher Benefit Servs., Inc. v. De La Torre*, 283 Fed. App'x 543, 546 (9th Cir. 2008) (potential loss of goodwill and customers causes irreparable injury). If the defendant's goods are (or may be in the future) of poor quality, this will reflect adversely upon plaintiff's business good will and reputation. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:47 (4th ed.). Similarly, in patent cases, "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is

22

often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok International Ltd. v. J. Baker, Inc*., 32 F.3d 1552, 1554 (Fed. Cir. 1994). Thus, Future Motion will be significantly and irreparably harmed if an injunction is not granted.

Second, any harm that could befall Defendant as a result of a temporary restraining order or a preliminary injunction is self-inflicted.  Defendant took a calculated risk when it willfully engaged in patent infringement and then came to the United States to exhibit its infringing product at CES.  Under such circumstances, courts generally refuse to weigh any "harm" in the defendant's favor.  *See Celsis In Vitro, Inc. v. CellzDirect, Inc*., 664 F.3d 922, 931 (Fed. Cir. 2012) ("the preliminary record suggests that [defendant's] losses were the result of its own calculated risk in selling a product with knowledge of [plaintiff's] patent"); *i4i v. Microsoft*, 598 F.3d at 863 (district court's permanent injunction analysis properly ignored consequences to infringer of its own infringement); *Smith Int'l, Inc. v. Hughes Tool Co*., 718 F.2d 1573, 1581 (Fed. Cir. 1983) (reversing denial of preliminary injunction where defendant was aware of patents and "took a calculated risk that it might infringe those patents.").

Finally, even if any harm were to weigh in Defendant favor, the security Future Motion will post against the temporary restraining order will offer recompense in the unlikely event that Defendant is found not to infringe by selling its infringing products at CES.  Thus, because Future Motion will be irreparably harmed by Defendant's actions in the absence of injunctive relief, and no harm accrues in Defendant's favor, the balance of hardships weighs in favor of granting a temporary restraining order and a preliminary injunction in this case.

### D.   INJUNCTIVE RELIEF IS IN THE PUBLIC'S INTEREST

Future Motion's requested injunctive relief is in the public's interest for at least two reasons.  First, public policy favors protection of the rights secured by valid patents, including the right to prevent infringement through preliminary relief: "[w]ithout the right to obtain an injunction, the right to exclude granted to the patentee [by the Constitution and Congress] would

23

have only a fraction of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research." *Smith Int'l*, 718 F.2d at 1578.  The grant of an injunction in this case would further the public's confidence in the patent and judiciary systems and provide a positive incentive for those in the electronics industry to continue developing innovative designs and patenting new ideas without the fear that they will be unable to stop infringements of their patents.

Second, enjoining Defendant's infringing activities will not harm the public.  There are other electric vehicles on the market which are not covered by Future Motion's patent.  The public will still be able to purchase those other non-infringing products, despite an injunction against Defendant.  *Hybritech*, 4 U.S.P.Q.2d at 1015 (granting preliminary injunction on products for which alternatives were available in the market); *National Presto Indus. Inc. v. Dazey Corp.*, 18 U.S.P.Q.2d 1113, 1121 (N.D. Ill. 1990) (granting TRO; "If an injunction makes the Dazey cooker unavailable, the public has plenty of substitutes, including [plaintiff's products].").  Furthermore, removing Defendant's infringing products from the marketplace will not cause a shortage of self-balancing electric skateboards covered by Future Motion's patents: Future Motion can supply the marketplace with more than enough products to prevent any shortage.  Thus, the public interest favors granting injunctive relief in this case.

**E.     INJUNCTIVE RELIEF SHOULD INCLUDE SEIZURE**

Because all of the relevant factors heavily favor Future Motion, this Court should grant Future Motion's request for a temporary restraining order and, in due course, a preliminary injunction.  As part of the TRO, the Court should include a seizure order to ensure compliance with the order and to prevent further infringement and injury to Future Motion.  The Court is empowered to grant a seizure order pursuant to the Court's inherent power and Fed. R. Civ. P. 64.  *Reebok International Ltd. v. Marnatech Enterprises Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

Seizure orders such as the one proposed here are common in intellectual property cases

24

because intellectual property rights, like the Asserted Patents in this case, confer the right to exclude others from using another's property without authorization.  Therefore, Courts issue "not just temporary restraining orders, which are frequently ignored—but seizure orders providing for the seizure of the counterfeit merchandise." *Vuitton v. White*, 945 F.2d 569, 571-72 (3d Cir. 1991); *Reebok Int'l*, 970 F.2d at 559 (affirming seizure order as part of injunction against willful trademark infringer).  Accordingly, Future Motion requests that the Court order seizure of all of Defendant's infringing "Surfing Electric Scooter" products from the CES show, as part of the Court's temporary restraining order.

## II.     FUTURE MOTION REQUESTS THAT THE COURT PERMIT SERVICE VIA EMAIL

Future Motion also requests that the Court enter an order permitting it to serve the present motion and supporting documents along with the summons, complaint, proposed temporary restraining order, and notice of any hearing the Court may schedule on Defendant by email, given that Defendant is located in China and has no apparent presence in the United States. Defendant's website indicates that the company can be contacted via email at leo@changzhou-first.com. *See* http://www.cz-first.com/about/?107.html. Future Motion will attempt to serve hard copies of the papers filed with the Court upon Defendant at the CES show.  However, if Future Motion is unable to effectuate personal service upon Defendant at CES, the process of serving Defendant with the relevant documents by international mail (and through the Hague Convention) would likely take weeks.  On the other hand, if the Court grants Future Motion's request for a temporary restraining order, the order would only remain in effect for a maximum of 14 days, and the hearing on the preliminary injunction must occur "at the earliest possible time" prior to the expiration of the temporary restraining order. Fed. R. Civ. P. 65(b).

This Court has permitted service by email under similar circumstances. *See*, *e.g.*, *Otter*

*Prods.*, 2013 U.S. Dist. LEXIS 159755 at *13 ("this Order and the Summons and Complaint must be served upon Anke, if found, at the time of the seizure, and by other means reasonably calculated to give Anke notice of this action, which shall include via email to all e-mail addresses provided by Anke on its website").  Future Motion therefore requests that the Court enter an order permitting it to serve Defendant with the relevant documents to the email address provided by Defendant on its website as set forth above.

### III.     FUTURE MOTION REQUESTS THAT DEFENDANT BE ORDERED TO SHOW CAUSE REGARDING THE ISSUANCE OF A PRELIMINARY INJUNCTION

The standard for issuance of a preliminary injunction is the same as the standard for issuance of a temporary restraining order. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Future Motion has met its burden with respect that standard. Accordingly, Future Motion respectfully requests that this Court issue a show-cause order requiring Defendant to demonstrate why the Court should not issue a preliminary injunction continuing the relief granted in the temporary restraining order.

### <u>CONCLUSION</u>

For the reasons set forth above, Future Motion respectfully requests that the Court enter an order temporarily restraining Defendant from infringing the Future Motion Asserted Patents for the duration of the 2016 CES show, including (1) an order restraining Defendant from offering the "Surfing Electric Scooter" products for sale or taking orders for the products, and (2) an order for seizure of all of Defendant's "Surfing Electric Scooter" products and related evidence from the CES show.  Future Motion also requests that the Court allow service to

///

///

///

Defendant via email, order Defendant to show cause regarding the issuance of a preliminary injunction, and set a hearing on Future Motion's request for a preliminary injunction.

Dated this 6th day of January, 2016.

LEWIS ROCA ROTHGERBER CHRISTIE LLP,


_____/s/ W. West Allen_____
W. West Allen
Nevada Bar No.: 5566
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Telephone: (702) 949-8230
Facsimile: (702) 949-8364
E-mail: wallen@lrrlaw.com


KOLISCH HARTWELL, P.C.
SHAWN J. KOLITCH (*Pro Hac Vice Pending*)
Oregon Bar No. 063980
200 Pacific Building
520 S.W. Yamhill Street
Portland, Oregon 97204
Telephone: (503) 224-6655
Facsimile: (503) 972-9115
E-mail: shawn@khpatent.com

*Attorneys for Plaintiff*
*Future Motion, Inc.*